Counsel, you may proceed. Good morning. Mary Lehman for Appellant Mrs. Ma. I'd like to reserve three minutes for rebuttal. For the Court's recent order, I will address whether Mrs. Ma properly alleged that the employee Jane Doe's torts were within the scope of her employment. Under California law, scope of employment for respondeat superior is interpreted broadly. It is also generally a question of fact. It is highly unusual to decide in a motion to dismiss. Indeed, as the Juarez Court stated, if there is any material dispute of fact on scope of employment, it should not be decided on a motion to dismiss. Juarez, that this Court cited in its order, was a California Court of Appeal that vacated a demur finding there were sufficient allegations of scope of employment. A demur is equivalent to the subtle 12B6 motion. The Court found that plaintiff in that case sufficiently alleged that the police officer's off-duty violent misconduct was indeed within the scope of their employment. The Juarez test looks for essentially a connection between the alleged misconduct and the employee's duties. Here, the alleged misconduct was by Jane Doe when my client, Mrs. Ma, entered the bank and she was approached by the customer service representative, Jane Doe, and asked if she could be of assistance. Ms. Lehman, you plead that the bank had a policy that they should not give out phone numbers. So, if Jane Doe allegedly, on the terms of the complaint, violated that policy, does that automatically take her conduct outside of the scope of employment? I don't think we pled that Jane Doe was not allowed to give out phone numbers. I think that was in the bank's motion to dismiss. I think in your complaint you say something that said that even if she was not supposed, even if the bank's policy was not to give out phone numbers, she still, there's still enough there for the bank to be liable. I'm just trying to figure out what to do with that as a pleading matter. I would refer the court to the Perez case, and the Perez case under California law says even if an employee violates an express rule of their employer, it can still be within the scope of their employment. I'm not so sure how you get around DAS. That's the struggle I have. How do we get to the knowledge for the bank here? Okay, well there's, I guess there's two different issues here under respondeat superior. We have a vicarious liability, so that if Jane Doe did the wrongful conduct, didn't do vicarious liability, the bank would be liable. And under DAS, DAS has to do with whether, and vicarious liability would be essentially direct taking. Correct. DAS goes to the allegations as to whether the bank assisted in the elder financial abuse. And DAS said, well the statute says assist, so we're going to look at aid and abet, and we're going to say that's the same as assist. So since aid and abet requires an actual knowledge standard, we're going to do that as well. Okay, and as our briefing in the lower court said, DAS has pretty much been rejected in California courts, unpublished. We've provided those. Not by the California Supreme Court. Not by the California Supreme Court, and I realize this court's hands are tied accordingly, what the law is. But in our reply brief, we referred the court to a recent district court decision that we think properly or provides a path forward to the proper policies under the elder abuse. Correct application of the law as to what is actual knowledge, and dealing with DAS. And to refresh the court's memory, Lynn said that actual knowledge for assisting elder abuse couldn't be satisfied with the standard must have known. And actual knowledge in other areas of California law is also satisfied by the standard must have known. Which makes sense, because actual knowledge can really only be proven by circumstantial evidence. So actual knowledge and must have known are essentially the same type of thing. What do you allege about how the bank actually knew or must have known about Jane Doe's giving out the scam phone number? I'm sorry, I couldn't hear that. I'm sorry, so what do you actually allege about, on that point, about the bank knowing, having actual knowledge or should have known or must have known that Jane Doe was participating in this scheme? By giving out the phone number. The scam. We allege that it must have known that what occurred here was elder abuse. And we say that, we didn't say that the bank must have known, we didn't say that the bank must have known that Jane Doe was involved in this scam of giving out a false number. However, we did make allegations that this same type of fraud had occurred three times at the bank. And Mrs. Ma was told that. So query whether that was a factor for the actual knowledge.  So the answering brief, for example, says most particularly, this is at 18 and 19, most particularly lacking is any argument that the amended complaint alleged facts showing that Jane Doe knew that the persons who answered the telephone would ensnare Ma in a Chinese authority scam. What's your response to that? That Jane Doe knew. Well, if you're asking us to attribute the knowledge of Jane Doe to the bank, that knowledge has to be the knowledge that it is a scam. Absolutely. What they must have known. There's a lot of policy arguments in here about how banks should do more. Elder abuse, that may be all true. But for the legal case, you need to establish that Jane Doe knew that she was getting Ma into a scam. And then we can start asking about the bank. But your friends say that you don't even plead that much. So where can we find that in your complaint? Absolutely. I would especially direct the court to our complaint, paragraph 43I. And this is a quote. Banna employee, Jane Doe was a Banna employee who actually assisted and knew she was conducting a scam that preyed upon Ma. That specifically, she knew it. Is that it? Might that be too conclusory? It's not it. I would refer to 2, 4, and 9, that they say that we say that Jane Doe stole this and Banna hires employees that steal. We say on paragraph 33 that Ma was a perfect victim for Jane Doe. Paragraph 44, that Jane Doe had knowledge of the scam. And then paragraph 87, we state that Banna failed to stop Jane Doe from committing the scam themselves. Okay, so there's, and then there's other page numbers, the paragraph numbers, 2, 4, 9, 11, 33. So where do you allege that Bank of America had this, this had happened there three times before? Is that alleged? Yes, it is. And that gives them notice? I'm sorry? That gives them constructive notice that their employees are engaging in this? Just to be clear, it occurred three times, and it was two times before Ma. So three times all total, yes. And that is alleged because when Mrs. Ma was trying to get information about the investigation, she was told by one of Banna's employees in the investigative department that this, something similar had occurred twice before in the same branch. So, yes, we say that that is part of the constructive notice that the bank had, that it must have known for assisting elder abuse, or that it should have known for direct elder abuse taking of property. You also, I think, at paragraph 53 of the complaint, plead that the bank ratified Doe's conduct by not filing a police report. How does that work? So, in other words, if we aren't able to find an agency arrangement relationship sufficient to attribute her knowledge to the bank on its own, that there's somehow ratification here. So why does not filing a police report, as alleged, ratify any conduct by Doe if she were acting originally outside of the scope of her employment? I'd like to preface that answer with saying that under the 12B6 standard, not only are our allegations deemed true, but reasonable inferences are to be made in our favor, and this court can use their experience and common sense in interpreting our allegations. So our allegations need to be interpreted broadly. We state that under the rule of law, USC 16-something, that when we reported the fraud, the bank was supposed to do an investigative report, and it was supposed to give us a copy and find out what the investigation turned up, and the bank did not. We allege that the bank gave Mrs. Ma the roundabout, wouldn't provide the video, wouldn't even connect her with the right person. So the idea that the bank is hiding something, per se, or could be involved or had knowledge of this fraud because it was the third time it happened and was trying to cover up, if you will. And this would tie into almost an estoppel argument. As we set forth in our briefs, the bank refused to give us information about Jane Doe, even her name. The problem was that it would likely destroy diversity, and the bank still wouldn't in violation of Federal Civil Procedure 1 and 26. And to the extent that the bank wants to say, well, we didn't allege this specific fact, you know, of Jane Doe's name, perhaps, or, you know, we did absolutely the best we could, the bank should be estopped from claiming more. And just to be clear, I think there's two aspects of the relationship between Jane Doe and the bank. And one is vicarious liability for the conduct, and that's the scope of employment that this court referred to in Juarez. And then there's also the agency argument, and we did plead that, I believe, under Civil Code 2232, is that the knowledge of Jane Doe can be attributed to the bank. And those are two separate, you know, issues, and I believe we went on both of them. But lest the court has any— You want to reserve the rest of your time? Absolutely. Thank you. Okay. Thank you. May it please the court, I'm Jan Chilton, representing Bank of America. I'd like first to address the court's focus question, if I might. And before I do that, even, I'd like to say at the outset that it's Bank of America's position that Jane Doe never existed. This alleged conversation never occurred. We're dealing with a fantasy world that was created by and is limited to the allegations of the amended complaint, and particularly paragraphs 2, 4, 34, and 43 of the amended complaint. And let me say that we agree with plaintiffs that the reasonable inference that arises from the allegations of those paragraphs is that Jane Doe, this fictional character, was a participant in the scheme that cheated the plaintiff. Do you have any doubt that she was cheated? I have no doubt that she was cheated. Okay. And that she was cheated through wire transactions at this branch of Bank of America? I'm sorry. I'm sorry, too. I don't know what's going on here. And that she was cheated through wire transactions through the branch of Bank of America where she had her account? If I can rephrase your honors question. Okay. I don't contest that she sent wire transfers that depleted her savings. She was fraudulently induced by phone calls, not anything having to do with the bank, to make the wire transfers. But what basis do you have to say this is a total fiction? Oh, the total fiction is Jane Doe, not the scam. But isn't that then a question, why doesn't that get Maw passed a motion to dismiss? Oh, your honor, it is precisely because you can't attribute, even if we assume, as we must on a motion to dismiss, that the fictional allegations are true, they don't go far enough to impose a respondeat superior liability on the bank. And I direct the court's attention to three California Supreme Court decisions that were decided in the 1980s and 1990s. They are the Lisa M., Mary M., and John R. cases that I gave the clerk this morning a list of. Are these cases that you cited in your brief? No, they are not. Okay, so the list of cases, yeah, I didn't understand quite what that list was. The list of cases you gave us this morning, that's cases that weren't cited in your brief? That weren't cited because I compiled the list to address the focus question that we received last week. Okay. And I wanted to refer to these cases in my oral argument, and I thought it would be easier than trying to give you the cites orally to give them to you in writing. Anyway, there are three reasons for looking to these three California Supreme Court cases. First, Erie says that the court must follow the law as stated by the California Supreme Court. Court of Appeal opinions like Juarez are useful guides only where the Supreme Court has not spoken. Secondly, as I'll get to in a moment, Juarez was a police officer case, and different rules apply to those cases. And third, the three Supreme Court cases are helpful because one of them found respondeat superior liability and two did not. So you get both sides of the coin there in three different factual situations. All three cases involved the same tort, a sexual assault. And the first thing that these three cases tell us is that police officer cases are different. Lisa M. No, excuse me, Mary M. is the case on that, and it makes the point strongly. It says that police officers exercise the most awesome and dangerous power that a democratic state possesses with respect to its residents. I guess I wouldn't overread too much into our use of, I think we cited Juarez for the test rather than the facts. And I guess I'd like to add another, well, so I'd like to hear, particularly with respect, I think it's paragraph 34, where there's a very vivid, true or not, that's not the question before us, very vivid picture that the complaint paints of Ms. Doe coming up to Ms. Ma asking for her help, walking, you know, she's clearly an employee, walking back to her desk, writing something at the desk, the phone number, bringing it back over. So that's the thing that I think raises the question of, like, how is this not in the scope of employment. Okay. Let me take that up. And before I – And I don't mean to take you away from the cases. It's just that's where the cases are different. We're dealing with a complaint here. Okay. So the second thing that the Supreme Court cases that I've cited teach is that particularly in crime cases, which is what we're dealing with here, sexual assault in the Supreme Court cases here, conspiracy to defraud, the employer is held liable only when the – excuse me – when the incident leading to the injury grows out of the employment. If all that happens is victim and tortfeasor meet at the place of employment, that's not enough. That's the Lisa M. case. Well, we've got more here. The perpetrator, the alleged perpetrator, relied on her ostensible position as an employee to provide the number in the guise of doing her job as advising and saying, well, we don't have those services here, but call this number. We've got those at this number. It is true that she asked a question and got a response, but the crime that this employee was supposedly engaged in didn't grow out of her work. Her work gave her the opportunity to give the phone number. Well, I guess that might be a slightly closer question. Certainly, there's nothing about sexual assault that would grow out of any work. But the fraud here was with respect to her Bank of America accounts. And I guess I'd add a layer of a court of appeal case, the Intermountain Mortgage case that applies Lisa M. says that what they're looking at is whether it's foreseeable. They want to know whether an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among the other costs of doing business. And they say there that fraud by a bank employee or ostensible bank employee was attributable to it. Of course, it's never a bank's business to defraud its clients. That's always outside the scope. And yet the state courts have told us that it can happen. Well, yes, but I do distinguish Intermountain Mortgage. You know, to be honest, Your Honor, I'm not familiar with the facts of that case. And so I can't give you an answer to your question. I'm sorry. But I would point out that this court has decided a somewhat similar case and gone a different way. And that's the OKI, semiconductor company versus Wells Fargo case, also on the list of cases that I gave the clerk. There, the teller was part of a scam scheme that stole computer parts and resold them for profit. The teller laundered the money through the bank, using the bank's facilities to launder the money, using her knowledge about anti-money laundering requirements to structure the transactions in a way that would not generate reports and so forth. And this court said she was acting outside the scope of her employment. And it further pointed out, and I think this is particularly significant here, that what OKI was trying to do was not hold the bank liable for the teller's wrongdoing, but for her co-conspirator's wrongdoing. And that was something that this court said it would not do. And that's exactly the same thing as what Mrs. Ma is asking this court to do here. The bank's Jane Doe gave her a phone number. She didn't rob her. She didn't take any money. So what else should she have alleged or would she have needed to have alleged to establish a sufficient relationship? Well, I mean, there are all kinds of things that could be alleged, I suppose. Right. But, of course, if the scam is, the concern if the scam is that you have someone impersonating bank employees to prey upon that bank's client, who, as alleged, is actually a bank employee, and the way that it works is all you need to do is give the phone number, how would you be able to plead a case like that if it occurred, if not in this way? Well, I think what you would need to do is show, as I think you asked, one of you asked, my opponent, that the bank had some reason to know what was going on here. But it had happened twice before. No, no. What happened twice before was some sort of scam. Not this particular scam necessarily, not the same employee. I mean, all that is alleged in the complaint is that somebody in the bank's investigation department said that, oh, the same similar sort of thing happened twice before. Well, that's way different from saying Jane Doe gave a phone number out twice before. If that had been the case, if it were Jane Doe giving out phone numbers repeatedly, you know, invading customers into scam schemes, that would be one thing. Mr. Children, I'm not sure we want to adopt a rule that gives a bank a free pass for the first time, and you can only state a claim against it even under a motion to dismiss, only when you can allege that it had happened once before. I agree, but we were talking about the kind of additional allegations that could lead to liability. I'm not saying we get a free pass, but there has to be some fact that leads the bank to know that something is wrong and needs to get done. Here, there's no allegation that Jane Doe did anything wrong before. There's no allegation that the bank had any reason to suspect her. And this gets to one of the other points I wanted to make about the three California Supreme Court cases. What the California Supreme Court says is not only do they look at whether the crime grew out of the employment, but also whether imposing respondeat superior liability under the circumstances of the case would promote the three goals of the respondeat superior doctrine. And those are preventing harm, compensating victims, and equitably distributing the losses of the enterprise. On preventing harm, you know, that's something that the bank couldn't do here. It can't prevent somebody whom it has no knowledge that they're doing wrong from proceeding. Do you have a case, I'd asked your friend about, does the bank have a policy of not allowing its employees to give out phone numbers? I can't answer that question. I don't know. Okay. You know, bank policy. If it did have a policy, do you have a case that says that that would be enough to take Doe outside of the scope of employment? No. And my opponent is quite correct in saying that Perez says that the mere fact that the employee violates an employer's policy doesn't necessarily mean that the employer escapes respondeat superior liability. However, if we can go from prevention of harm, which I think is difficult or impossible in this case, and certainly impossible as to the co-conspirators over whom the bank exercises no control whatsoever, we move to the second policy, which is assuring compensation. It sounds, when you read the words, as if that means, well, wealthy bank, you know, obviously can pay where MA can't find the real perpetrators. But that's not the way the Supreme Court looks at it. In Lisa M. and John R., it looked at whether the loss was insurable. And here, it would not be. Intentional torts are not insurable. Insurance Code Section 533 prohibits it. And typical bank insurance policies like blanket bonds and general liability insurance policies don't cover this sort of loss. And the third policy that they looked at is the equitable distribution of loss. And here, Lisa M. said that factor is basically a restatement of whether the employee's conduct was so unusual and startling that it would seem unfair to impose the resulting loss on the employer. And I think that's the case here. Now, I did want to mention one other case, if I might, which is Lusk v. Kellogg, because I think it is the case that, other than this Court's Oki decision, most closely resembles the facts of this case. There, a bank teller defrauded the bank's customer by getting the customer to lend the teller personally $50,000, which the teller never repaid. And the district court in that case held that respondeat superior did not apply because the teller's actions were clearly personally motivated and the motivation was not generated by her employment. The same thing applies here. The motivation of Jane Doe, if she ever existed, was her own. She was involved in a crime spree or conspiracy. It had nothing to do with her employment. The employment simply gave her the opportunity to conduct the criminal enterprise that she was involved in. What I find interesting here is that the employment, given that it's her bank and there's some sense of fiduciary obligation and trust in your bank, it kind of lends a little credibility to the scheme that the bank employee gave her. The employment seems to have ensured that the scheme would work. She would follow up and call that number. Well, you have greater faith in banks than I guess I do. I represent them. You represent them. Okay, so you know. Okay, never mind. Okay. All right. It's just a question I had. To answer your question, let me just say one last thing. Please do not send this video to your employees. I'm sorry. The business of ratification and police officer's reports came up. I just wanted to point out that the allegation about needing to provide a copy of the investigation, all that stuff, is based on a statute that doesn't apply here. It's 1693F, I believe, of Title 15, which is part of the Electronic Funds Transfer Act. That act does not apply to wire transfers. Okay. Thank you, counsel. Thank you. You have time reserved to rebut. Ms. Lehman. Thank you. Just really quickly. I think the important thing to remember is the standard of review in this case, which I already discussed, that inferences must be in our favor, the facts must be construed that we plead must be true, and this court can use its common sense judicial experience in construing our complaint to sufficiently state a cause of action. It would certainly be a closer case if this person was a teller and in their duties as a teller, maybe they're required to provide certain kinds of information. This person, Jane Doe, as alleged, was a customer service representative that provided one phone number and nothing else. I'm wondering, to counsel on the other side, that this is sort of outside, didn't grow out of her employment. What do you make of that? I absolutely disagree that the fact that she was the customer service representative greeter, that put her in a less trustworthy or presenting as a trustworthy person. You know, when you go to the bank, you specifically. But not less trustworthy. More of not within the scope of the work, I guess. Okay. And not growing out of that work. Okay. Customers. I continue to disagree. Customer service and you provide information about banking transactions and, you know, about your accounts and things to do. That is their job. They are, I would say, more supervisory than even the tellers because, oh, you want to deposit a check? Go see this person. You want to open an account? See this person. You want to add someone? Call this number. I would say that they are actually more powerful and have more interaction and more opportunities, if you will, to commit towards. So any time a scammer contacts any managers to, let's say that there's this scamming group of people, as there are, who target employees within banks and say, your job is just to provide phone numbers, to redirect these individuals. That's your job. That's all you need to do. And do that across the country. Then the bank is liable in every single one of those situations is what you're saying. I don't think I'm saying that. I'm saying that it depends on the specific facts of this case because scope of employment for responding at Superior is a factual question, and it's supposed to be construed broadly. Like, for example, if Jane Doe had given Ma a phone number, you know, in the parking lot or outside the door, you know, that that would not be within the scope of her employment. I think the test, and Juarez talks about this. I mean, it is hard, I agree, is finding something within the scope of employment when it's an intentional malicious tort because almost by definition it is not what they were supposed to do. But the law is replete with examples where intentional torts and wrongdoing, violent, bad stuff, even sexual assault is within the scope of employment to hold the employer liable. And I would say that the test seems to be, and this is the Samantha Bee case, which I believe might be cited in Juarez, and actually the California jury instruction on responding at Superior states that if it's predictable or foreseeable that the employees will commit this intentional tort of the type of which liability is sought, then there is responding at Superior. And the very nature that they are the customer service representatives answering questions about banks, and they have so much authority and so much trust is given to them. I mean, banking institutions are who we trust the most with our essentially financial lives, and it is reasonably foreseeable that you said the scammers would target someone who worked at a bank because that would be the person that would be trusted. Ms. Lehman, I'm sorry, I wanted to ask this earlier, but the problems we're having here with a DOE plaintiff, the civil rules in a fraud case, the civil rules address with Rule 9, which requires fraud to be pleaded with particularity. Fraud is an element of the California statutes here. Do you have any authority one way or the other on why you didn't need to meet the Rule 9 requirements to plead what Ms. Doe did in defrauding Ms. Mahl? Okay, so we did not have a cause of action for fraud. But is it not an element of the abuse? I mean, it's fine if you know law that says that it's not. Maybe that's why it didn't come up, but it strikes me as we're talking about these things that the way we usually deal with these sorts of allegations of fraud by an unknown person is require that they be pled with particularity. We pled Elder Abuse Act claims, and we pled a violation of the UCL. And there is no requirement for Elder Abuse Act claims that it be pled with particularity, and essentially that's what elder abuse is when you, quote, unquote, defraud an elderly person of their property. Right, but that's a federal question of pleading, right? That's not answered by California law. It's a federal question of pleading. If the California law provides a claim for fraud, and fraud is an element of that, why wouldn't Rule 9 require pleading with particularity? I don't think fraud's an element of an elder abuse claim. Okay. Okay, a taking, and if you look at the definition of a wrongful taking, a taking of property of an elder, it's with knowledge that it would, that should, that. Or dependent adult for a wrongful use.  With intent to defraud or both. So it could be either. Okay. Thank you. And then I would final that under ERI that if a procedure rule has a substantive effect, we apply. Okay, well, I guess I have one last question. If you find out the identity of Jane Doe, and she is likely also a California resident, if she was employed at the bank, then would federal jurisdiction be defeated? Yes, absolutely. That we made an ex parte motion and a formal motion before the motion to dismiss to say that we ought to have the basic jurisdictional discovery, and the trial court made the mistake of applying the test for jurisdictional discovery for removal purposes. But our case had already been removed. And as we briefed, I think, very well in our reply brief, is that the court is an abuse of discretion per se to dismiss the case on the merits when jurisdiction is questionable and discovery is not allowed. And we say it's prejudicial probably in two respects. Number one, because we would get out of this DOS problem, we believe, in state court. And number two, having more information about Jane Doe would help our complaint. For us, Happel, maybe she was a manager, and that would more directly attribute her knowledge to the bank. All right. Thank you very much. Counsel, Ma versus Bank of America is submitted.
judges: WARDLAW, MENDOZA, JOHNSTONE